JON D. FELDHAMMER (CABN 255031)
jon.feldhammer@bakerbotts.com
BENJAMIN KOODRICH (CABN 262521)
benjamin.koodrich@bakerbotts.com
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: +1.415.291.6200
Fax: +1.415.291.6300

Attorneys for Defendant
RAYMOND GALLIANI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>RAYMOND GALLIANI,<br><br>            Defendant. | Case No.: 3:22-cv-03365-JSC<br><br>**ANSWER TO COMPLAINT** |

Defendant, Raymond Galliani, for his answer to the Complaint to Reduce Civil Penalty Assessments to Judgment, responds to the allegations of the complaint as follows, using the same paragraph numbering from the complaint.

1.      This is a timely civil action to collect the outstanding unpaid civil penalty assessments, made pursuant to 31 U.S.C. § 5321(a)(5), against Raymond Galliani. These penalties, commonly known as "FBAR penalties," arise from Mr. Galliani's failure to report his financial interest in, or signatory or other authority over, several foreign financial accounts for the 2013, 2014, 2015, and 2016 calendar years, as required under 31 U.S.C. § 5314 and the implementing regulations thereunder.

    **RESPONSE:** Defendant denies the allegations contained in paragraph 1 of the complaint.

2.     The United States brings this action with the authorization of the Secretary of the Treasury (*see* 31 U.S.C. § 3711(g)(4)(C)) and at the direction of the Attorney General of the United States.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 2 of the complaint.

3.     Defendant Raymond Galliani resides in Moraga, California, and was a United States citizen during the years at issue.

**RESPONSE:** Defendant admits the allegations contained in paragraph 3 of the complaint.

4.     Mr. Galliani graduated from the University of California at Berkeley with a B.S. in Economics and Business Administration. For most of his career, Mr. Galliani worked as an insurance salesman and broker for large insurance companies. He also provided clients with financial planning services.

**RESPONSE:** Defendant admits that he graduated from the University of California, Berkeley, with a bachelor of science degree in business administration. Defendant admits that he worked as an insurance agent and broker. Except as specifically admitted, defendant denies the allegations contained in paragraph 4 of the complaint.

5.     Mr. Galliani and his wife, Sharon Galliani, have three daughters: Lisa Galliani, Pamela Gagliani-Annunciation, and Marissa Galliani-Sanavio.

**RESPONSE:** Defendant admits that he and his wife, Sharon Galliani, have three daughters: Lisa Galliani, Pamela Gagliani-Annunciation, and Marissa Galliani. Except as specifically admitted, defendant denies the allegations contained in paragraph 5 of the complaint.

6.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1355.

**RESPONSE:** Defendant admits the allegations contained in paragraph 6 of the complaint.

7.     Venue properly lies in the Northern District of California under 28 U.S.C. §§ 1391(b)(1) and 1395(a) because Mr. Galliani resides and is found within this judicial district.

**RESPONSE:** Defendant admits the allegations contained in paragraph 7 of the complaint.

8.     Federal law requires every resident or citizen of the United States who has a financial interest in, or signatory or other authority over, a bank, securities, or other financial account in a

foreign country to report that relationship to the Internal Revenue Service ("IRS") for each year the relationship exists. *See* 31 U.S.C. § 5314(a); 31 C.F.R. § 1010.350(a).

**RESPONSE:** Defendant admits that 31 U.S.C. § 5314(a) provides that "the Secretary of the Treasury shall require a resident or citizen of the United States or a person in, and doing business in, the United States, to keep records, file reports, or keep records and file reports, when the resident, citizen, or person makes a transaction or maintains a relation for any person with a foreign financial agency." Defendant admits that 31 C.F.R. § 1010.350(a) provides: "Each United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year in which such relationship exists…." Defendant denies the allegations contained in paragraph 8 of the complaint to the extent that they do not correctly state the law. Except as specifically admitted, defendant denies the allegations contained in paragraph 8 of the complaint.

9.     To fulfill this requirement, each such United States resident or citizen must file with the IRS a "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR." The proper form to report FBAR information for the 2013, 2014, 2015, and 2016 calendar years was FinCEN Form 114.

**RESPONSE:** Defendant admits that 31 C.F.R. § 1010.350(a) in effect for the calendar years 2013, 2014, 2015, and 2016 provides: "Each United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country…shall provide such information as shall be specified in a reporting form prescribed under 31 U.S.C. 5314 to be filed by such persons. The form prescribed under section 5314 is the Report of Foreign Bank and Financial Accounts (TD-F 90-22.1), or any successor form." Defendant admits that the prescribed form for the calendar years 2013, 2014, 2015, and 2016 was FinCEN Form 114. Defendant denies the allegations contained in paragraph 9 of the complaint to the extent that they do not correctly state the law. Except as specifically admitted, defendant denies the allegations contained in paragraph 9 of the complaint.

10.     For the 2013, 2014, and 2015 calendar years, accountholders with an aggregate

balance exceeding $10,000 in foreign financial accounts were required to file an FBAR no later than June 30 of the following calendar year. *See* 31 C.F.R. § 1010.306(c). For the 2016 calendar year, accountholders with an aggregate balance exceeding $10,000 in foreign financial accounts were required to file an FBAR by April 15 of the following calendar year, with an automatic extension to October 15. *See* Pub. L. No. 114-41, Sec. 2006(b)(11).

**RESPONSE:** Defendant admits that 31 C.F.R. § 1010.306(c) in effect for calendar years 2013, 2014, and 2015 provides that "[r]eports required to be filed by § 1010.350 shall be filed…on or before June 30 of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." Defendant admits that section 2006(b) of the Surface Transportation and Veterans Health Care Choice Improvement Act of 2015, Pub. L. No. 114-41, 129 Stat. 443, provides that "[i]n the case of returns for taxable years beginning after December 31, 2015, the Secretary of the Treasury, or the Secretary's designee, shall modify appropriate regulations to provide as follows:…(11) The due date of FinCEN Report 114 (relating to Report of Foreign Bank and Financial Accounts) shall be April 15 with a maximum extension for a 6-month period ending on October 15 and with provision for an extension under rules similar to the rules in Treas. Reg. section 1.6081-5." *Id.* at 457. Defendant denies the allegations contained in paragraph 10 of the complaint to the extent that they do not correctly state the law. Except as specifically admitted, defendant denies the allegations contained in paragraph 10 of the complaint.

11.     Any United States resident or citizen who is required to comply with the FBAR reporting requirements, but fails to do so, may be subject to a civil penalty. For violations involving the willful failure to report an interest in a foreign account, the maximum civil penalty for each violation is the greater of $100,000 (adjusted for inflation) or 50% of the balance in the account at the time of the violation. *See* 31 U.S.C. § 5321(a)(5)(C).

**RESPONSE:** Defendant admits that 31 U.S.C. § 5321(a) provides that "[t]he Secretary of the Treasury may impose a civil money penalty on any person who violates…any provision of section 5314." Defendant denies the allegation that "[f]or violations involving the willful failure to report an interest in a foreign account, the maximum civil penalty for each violation is the greater of $100,000 (adjusted for inflation) or 50% of the balance in the account at the time of the violation."

Defendant admits that 31 C.F.R. § 1010.820(g) in effect for the calendar years 2013, 2014, 2015, and 2016 provides that "[f]or any willful violation committed after October 27, 1986, of any requirement of § 1010.350…the Secretary may assess upon any person, a civil penalty:…(2) In the case of a violation of § 1010.350…involving a failure to report the existence of an account or any identifying information required to be provided with respect to such account, a civil penalty not to exceed the greater of the amount (not to exceed $100,000) equal to the balance in the account at the time of the violation, or $25,000." Defendant denies the allegations contained in paragraph 11 of the complaint to the extent that they do not correctly state the law. Except as specifically admitted, defendant denies the allegations contained in paragraph 11 of the complaint.

12.     This FBAR penalty is subject to interest and additional penalties or other additions under 31 U.S.C. § 3717.

**RESPONSE:** Defendant admits that 31 U.S.C. § 3717 provides, in cases to which that section applies, for the charging of interest on an outstanding debt on a United States Government claim and for the assessment of certain charges on such a claim. Defendant denies that he is subject to any such interest, penalties, or additions. Defendant denies the allegations contained in paragraph 12 of the complaint to the extent that they do not correctly state the law. Except as specifically admitted, defendant denies the allegations contained in paragraph 12 of the complaint.

13.     Mr. Galliani had a financial interest in, or signatory or other authority over, the foreign financial accounts at issue in this action in two offshore "structures," containing trusts, limited liability companies, nominee entities, and corporations. These two structures are (i) the Janet Trust Structure and (ii) the Orange LLC Structure.

**RESPONSE:** Defendant denies the allegations contained in paragraph 13 of the complaint.

14.     The Janet Trust Structure, which consisted of a trust (eventually the "Janet Trust"), a corporation, and financial accounts was based in Guernsey and existed from 1995-2016.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 14 of the complaint.

15.     The Janet Trust was originally settled as the Bruna Trust on June 28, 1995, by a Revocable Deed of Settlement.

1    **RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the

2    truth of the allegations contained in paragraph 15 of the complaint.

3        16.    The purported settlor of the Bruna Trust was Nicoletta Sanavio, an Italian citizen and

4    the mother-in-law of Mr. Galliani's daughter, Melissa.

5        **RESPONSE:** Defendant admits that Nicoletta Sanavio was the settlor of the Bruna Trust and

6    that she was an Italian citizen. Except as specifically admitted, defendant denies the allegations

7    contained in paragraph 16 of the complaint.

8        17.    In connection with settling the Bruna Trust, Ms. Sanavio granted power of attorney

9    over the Trust to Peter Howe, who later became the CEO of Blenheim Trust Company, Ltd.

10   ("Blenheim"), located in Guernsey.

11       **RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the

12   truth of the allegations contained in paragraph 17 of the complaint.

13       18.    The initial trustee of the Bruna Trust was Elfin Trust Company, Ltd., a predecessor

14   entity to Blenheim.

15       **RESPONSE:** Defendant admits that Elfin Trust Company Limited was named as "the

16   Trustees" in the Revocable Deed of Settlement Known as the Bruna Trust. Except as specifically

17   admitted, defendant lacks knowledge or information sufficient to form a belief about the truth of the

18   allegations contained in paragraph 18 of the complaint.

19       19.    Blenheim, the successor to Elfin Trust Company, later became the trustee of this trust.

20       **RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the

21   truth of the allegations contained in paragraph 19 of the complaint.

22       20.    Mr. and Mrs. Galliani, their three daughters, their niece, and the issue of their

23   daughters and niece were the only named beneficiaries of the Bruna Trust.

24       **RESPONSE:** Defendant admits that the following persons were named as discretionary

25   beneficiaries in the Revocable Deed of Settlement Known as the Bruna Trust: Raymond A. Galliani;

26   Sharon F. Galliani; Marissa M. Galliani-Sanavio and her issue; Pamela M. Gagliani-Annunciation

27   and her issue; Lisa M. Galliani and her issue; and Diana Kushin and her issue. Except as specifically

28   admitted, defendant lacks knowledge or information sufficient to form a belief about the truth of the

allegations contained in paragraph 20 of the complaint.

21.     In 1998, the Bruna Trust was renamed the Janet Trust.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 21 of the complaint.

22.     In approximately 1999, Mr. Galliani created a company called Carbonel, Inc. ("Carbonel") in Nevis, West Indies, to incorporate a deferred compensation plan for the benefit of himself.

**RESPONSE:** Defendant denies the allegations contained in paragraph 22 of the complaint.

23.     The Janet Trust owned 100% of the shares of Carbonel.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 23 of the complaint.

24.     Blenheim, as trustee of the Janet Trust, controlled Carbonel.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 24 of the complaint.

25.     Carbonel and insurance companies Britannia and Hampton Insurance entered into an agreement through which consultancy fees, supervisory fees, and commissions earned by Mr. Galliani were instead paid to Carbonel.

**RESPONSE:** Defendant denies the allegations contained in paragraph 25 of the complaint.

26.     Carbonel made unsecured, interest-free loans to the Janet Trust. Those loans were later reclassified as dividends on the financial statements for the Janet Trust.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 26 of the complaint.

27.     The Janet Trust would then issue those funds for distributions to Mr. and Mrs. Galliani and make unsecured, interest-free loans to Mr. Galliani.

**RESPONSE:** Defendant denies the allegations contained in paragraph 27 of the complaint.

28.     In 2015, Mr. Galliani contacted Blenheim to inquire about terminating the Janet Trust Structure. He initially wanted the assets to be distributed to his daughters upon termination.

**RESPONSE:** Defendant denies the allegations contained in paragraph 28 of the complaint.

29.     Blenheim contacted Mr. Galliani's attorney located in the United States to inform the attorney of the pending termination. In communications between Blenheim and this domestic attorney, Blenheim refers to Ms. Sanavio as a nominee settlor and advises against revoking the Janet Trust and distributing its assets to Ms. Sanavio, claiming that it would be "awkward" to do so.

**RESPONSE:** Defendant denies that "Blenheim contacted Mr. Galliani's attorney located in the United States to inform the attorney of the pending termination." Defendant lacks knowledge or information sufficient to form a belief about the truth of the rest of the allegations contained in paragraph 29 of the complaint.

30.     In these communications, Blenheim also explained that Carbonel existed to siphon deferred compensation to Mr. Galliani.

**RESPONSE:** Defendant denies that the allegation that "Carbonel existed to siphon deferred compensation to Mr. Galliani." Defendant lacks knowledge or information sufficient to form a belief about the truth of the rest of the allegations contained in paragraph 30 of the complaint.

31.     Eventually, on advice from his attorney, Mr. Galliani dissolved the Janet Trust Structure in 2016, liquidated the bank accounts, and distributed the remaining assets to himself by wire transfer to a bank account located in the United States.

**RESPONSE:** Defendant denies the allegations contained in paragraph 31 of the complaint.

32.     The Janet Trust Structure had four foreign bank accounts.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 32 of the complaint.

33.     As part of the Janet Trust Structure, Blenheim held three foreign bank accounts in its name: two at Investec Specialist Bank ("Investec") in Guernsey on behalf of Carbonel; and one at the Royal Bank of Scotland International ("RBSI") in Guernsey on behalf of the Janet Trust.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 33 of the complaint.

34.     Carbonel also held an account in its own name at the RBSI in Guernsey.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 34 of the complaint.

35.     These four accounts are more particularly identified as follows:

| Bank | Account No. (Last 4 Digits) | Named Holder of Account | Years of FBAR Penalties |
|------|------|------|------|
| RBSI | 2237 | Blenheim on behalf of Janet Trust | 2013-2016 |
| RBSI | 0986 | Carbonel on behalf of itself | 2013-2016 |
| Investec | 8901 | Blenheim on behalf of Carbonel | 2013-2016 |
| Investec | 8902 | Blenheim on behalf of Carbonel | 2013-2015 |

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 35 of the complaint.

36.     Mr. Galliani exerted complete authority and control over the Janet Trust Structure and directed the assets among the four bank accounts.

**RESPONSE:** Defendant denies the allegations contained in paragraph 36 of the complaint.

37.     Carbonel was incorporated to channel service income earned by Mr. Galliani through the Janet Trust, which would reclassify this income as loans or distributions before transferring the income to Mr. Galliani.

**RESPONSE:** Defendant denies the allegations contained in paragraph 37 of the complaint.

38.     The Janet Trust Structure was set up to take in ordinary income earned by Mr. Galliani, recharacterize that income, and distribute this income back to Mr. Galliani at a lower tax rate.

**RESPONSE:** Defendant denies the allegations contained in paragraph 38 of the complaint.

39.     Mr. Galliani could obtain funds from the assets of the Janet Trust Structure whenever he wanted with no interference or approval from anyone else. He also had direct access and control over the four bank accounts held as part of the Janet Trust Structure described in paragraphs 32-35, above.

**RESPONSE:** Defendant denies the allegations contained in paragraph 39 of the complaint.

40.     In 2015, Mr. Galliani decided unilaterally to terminate the Janet Trust Structure.

9

1  **RESPONSE:** Defendant denies the allegations contained in paragraph 40 of the complaint.

2      41.      With advice from Blenheim and his attorney in the United States, Mr. Galliani

3  controlled when the Janet Trust Structure terminated, who received the asset distribution, and the

4  income tax characterization of that distribution.

5      **RESPONSE:** Defendant denies the allegations contained in paragraph 41 of the complaint.

6      42.      Furthermore, the purported settlor of the trust, Mr. Galliani's daughter's Italian

7  mother-in-law, does not appear to have been consulted or considered as a viable recipient of the

8  Janet Trust's assets upon termination despite being the trust's purported settlor.

9      **RESPONSE:** Defendant denies the allegations contained in paragraph 42 of the complaint.

10      43.      Mr. Galliani was effectively the settlor and beneficiary of the Janet Trust Structure

11  and had complete authority over the four accounts of the Janet Trust Structure and the funds within

12  those accounts.

13      **RESPONSE:** Defendant admits that he was named as a discretionary beneficiary in the

14  Revocable Deed of Settlement Known as the Bruna Trust. Except as specifically admitted, defendant

15  denies the allegations contained in paragraph 43 of the complaint.

16      44.      Mr. Galliani also was the beneficial owner of the Janet Trust from its inception until

17  its termination.

18      **RESPONSE:** Defendant denies the allegations contained in paragraph 44 of the complaint.

19      45.      The Orange LLC Structure was another offshore structure utilized by Mr. and Mrs.

20  Galliani to hide their income from the IRS while at the same time receiving that income through

21  disguised payments referred to as annuity payments.

22      **RESPONSE:** Defendant admits receiving annuity payments that he and Mrs. Galliani

23  properly reported as annuity income on their income tax returns and on which they paid all tax due.

24  Except as specifically admitted, defendant denies the allegations contained in paragraph 45 of the

25  complaint.

26      46.      Orange LLC was registered in the Island of Nevis on December 24, 1999, with Clyde

27  Trading Limited, an entity controlled by Peter Howe, CEO of Blenheim, holding a 90% membership

28  interest. Eventually, after 2012, Orange LLC's sole member became a company called Greising

Properties Limited.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 46 of the complaint.

47.     On December 29, 1999, Orange LLC applied to Leopold Joseph (Bahamas), Ltd. ("Leopold Joseph"), asking it to form two entities: Titan Holdings, Ltd. ("Titan") and Saturn One, Ltd. ("Saturn").

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 47 of the complaint.

48.     In December 1999, Titan and Saturn were registered as International Business Corporations in the Bahamas. Although Orange LLC held 100% of the shares of both Titan and Saturn, Mr. and Mrs. Galliani were the true beneficial owners of Titan and Saturn.

**RESPONSE:** Defendant denies that he or Mrs. Galliani "were the true beneficial owners of Titan and Saturn." Defendant lacks knowledge or information sufficient to form a belief about the truth of the rest of the allegations contained in paragraph 48 of the complaint.

49.     Mr. and Mrs. Galliani funded the Orange LLC Structure through a series of purported private annuity agreements between Mr. Galliani and Titan, and between Mrs. Galliani and Saturn.

**RESPONSE:** Defendant denies the allegations contained in paragraph 49 of the complaint.

50.     These annuity agreements also served to repatriate funds from the Galliani's offshore accounts back into the United States.

**RESPONSE:** Defendant denies the allegations contained in paragraph 50 of the complaint.

51.     In April 2000, a trust named the Galliani Family Trust Dated April 16, 1985, entered into a purported "private annuity agreement" on Mr. Galliani's behalf with Titan. The agreement provided that Mr. Galliani would transfer an unspecified "receivable" of $610,263 to Titan in exchange for an annual purported annuity payment, the amount of which was to be based on an agreed-upon formula.

**RESPONSE:** Defendant admits that in April 2000 the Galliani Family Trust on behalf of defendant entered into a private annuity agreement with Titan Holdings Ltd. Defendant denies the allegations contained in paragraph 51 of the complaint to the extent that they do not correctly state

1    the contents of that agreement. Except as specifically admitted, defendant denies the allegations

2    contained in paragraph 51 of the complaint.

3         52.    This agreement provided that purported annuity payments would cease upon Mr.

4    Galliani's death, there were no "rights of survivorship," and Mr. Galliani's heirs and estate were not

5    entitled to any payments.

6         **RESPONSE:** Defendant admits that the agreement referenced in his response to paragraph

7    51 of the complaint provides that "such Annuity payments shall terminate and lapse with the last

8    payment immediately preceding the death of the Annuitant, or upon the death of the Annuitant," that

9    "no heir, legatee, creditor, or beneficiary of the Annuitant or of the estate of the Annuitant, shall

10   have any rights whatsoever under this Agreement except as is expressly stated in Section 2.5," and

11   that "the Annuity provided for herein shall contain no survivorship provision whatsoever except as is

12   expressly stated in Section 2.5." Defendant denies the allegations contained in paragraph 52 of the

13   complaint to the extent that they do not correctly state the contents of that agreement. Except as

14   specifically admitted, defendant denies the allegations contained in paragraph 52 of the complaint.

15        53.    Mr. and Mrs. Galliani entered into other purported "annuity agreements" in late 2003.

16        **RESPONSE:** Defendant admits that he and Mrs. Galliani entered into private annuity

17   agreements effective December 31, 2003. Defendant denies the allegations contained in paragraph

18   53 of the complaint to the extent that they do not correctly state the contents of those agreements.

19   Except as specifically admitted, defendant denies the allegations contained in paragraph 53 of the

20   complaint.

21        54.    Mr. Galliani entered into a second purported "annuity agreement" with Titan in which

22   Mr. Galliani transferred an unspecified "receivable" of $2,647,288 to Titan in exchange for

23   purported annuity payments. Unlike the 2000 "annuity agreement," these payments would be

24   deferred until August 6, 2009, Mr. Galliani's 74th birthday.

25        **RESPONSE:** Defendant admits that he entered into a private annuity agreement with Titan

26   Holdings Ltd. Defendant denies the allegations contained in paragraph 54 of the complaint to the

27   extent that they do not correctly state the contents of that agreement. Except as specifically admitted,

28   defendant denies the allegations contained in paragraph 54 of the complaint.

55.     Mrs. Galliani entered into two purported "annuity agreements" with Saturn. The first stipulated that Mrs. Galliani would transfer an unspecified "receivable" of $2,592,884 into Saturn in exchange for deferred purported annuity payments beginning on October 4, 2011, Mrs. Galliani's 74th birthday. The second stipulated that Mrs. Galliani would transfer an unspecified "receivable" of $694,066 into Saturn in exchange for deferred purported annuity payments beginning on October 4, 2012, Mrs. Galliani's 75th birthday.

**RESPONSE:** Defendant admits that Mrs. Galliani entered into a private annuity agreement with Saturn One Limited. Defendant admits that the Galliani Family Trust on behalf of Mrs. Galliani entered into a private annuity agreement with Saturn One Limited. Defendant denies the allegations contained in paragraph 55 of the complaint to the extent that they do not correctly state the contents of those agreements. Except as specifically admitted, defendant denies the allegations contained in paragraph 55 of the complaint.

56.     Leopold Joseph became Butterfield Bank ("Butterfield") in 2007.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 56 of the complaint.

57.     The Orange LLC Structure had four foreign bank accounts.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 57 of the complaint.

58.     As part of the Orange LLC Structure, Butterfield maintained two accounts: one held in the name of Titan and one held in the name of Saturn.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 58 of the complaint.

59.     Butterfield labeled and treated these accounts as "Due from Banks-Demand." "Due from Banks" accounts allow fund transfers between banks both domestically and internationally. Butterfield maintained correspondent bank accounts with the Bank of New York Mellon to facilitate transfers from and to United States banks.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 59 of the complaint.

60.     The Titan and Saturn accounts received deposits from Morgan Stanley accounts located in the United States. These cash deposits funded Mr. and Mrs. Galliani's purported annuity payments and paid certain expenses incurred by Mr. and Mrs. Galliani.

**RESPONSE:** Defendant denies the allegation that "[t]hese cash deposits…paid certain expenses incurred by Mr. and Mrs. Galliani." Defendant lacks knowledge or information sufficient to form a belief about the truth of the rest of the allegations contained in paragraph 60 of the complaint.

61.     Orange LLC also held an account in its own name at RBSI in Guernsey.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 61 of the complaint.

62.     Blenheim held a separate account for activities associated with Orange LLC at Investec in Guernsey.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 62 of the complaint.

63.     These four accounts are more particularly identified as follows:

| Bank | Account No. (Last 4 Digits) | Named Holder of Account | Years of FBAR Penalties |
|---|---|---|---|
| Butterfield Bank (Bahamas) | 4856 | Titan | 2013-2016 |
| Butterfield Bank (Bahamas) | 4814 | Saturn | 2013-2016 |
| RBIS | 8737 | Orange LLC | 2013-2015 |
| Investec | 9701 | Blenheim on behalf of Orange LLC | 2015-2016 |

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 63 of the complaint.

64.     Mr. Galliani exerted complete authority and control over the Orange LLC Structure and directed the assets among the four bank accounts.

**RESPONSE:** Defendant denies the allegations contained in paragraph 64 of the complaint.

65.     To create Titan and Saturn, Joseph Leopold required the following documents from the entities' beneficial owner: references from banks or professional advisors; a copy of the

beneficial owner's passport; and evidence verifying the owner's address.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 65 of the complaint.

66.     Though incorporating paperwork listed Orange LLC as the beneficial owner of Titan and Saturn, Mr. and Mrs. Galliani provided the required documents from the beneficial owner.

**RESPONSE:** Defendant denies the allegations contained in paragraph 66 of the complaint.

67.     Mr. and Mrs. Galliani provided references from their American attorney, copies of their United States passports, and a water bill bearing their address in the United States.

**RESPONSE:** Defendant denies the allegations contained in paragraph 67 of the complaint.

68.     Mr. and Mrs. Galliani benefitted from Titan and Saturn. They received "annuity payments" from Titan and Saturn and Titan and Saturn paid some of their personal expenses.

**RESPONSE:** Defendant admits receiving annuity payments that he and Mrs. Galliani properly reported as annuity income on their income tax returns and on which they paid all tax due. Except as specifically admitted, defendant denies the allegations contained in paragraph 68 of the complaint.

69.     Mr. and Mrs. Galliani also amended their "annuities," affecting the amounts of money transferred into the Titan and Saturn accounts. A 2003 amendment between Mr. Galliani and Titan decreased the "receivable" value from $2,647,288 to $1,825,473 without explanation. This amendment also postponed Mr. Galliani's first "annuity payment" from his 74th birthday in 2009 to his 82nd birthday in 2017.

**RESPONSE:** Defendant admits that the parties agreed to amendments of certain private annuity agreements. Defendant denies the allegations contained in paragraph 69 of the complaint to the extent that they do not correctly state the contents of those amended agreements. Except as specifically admitted, defendant denies the allegations contained in paragraph 69 of the complaint.

70.     Mrs. Galliani made similar changes in her agreements with Saturn. In 2010, Mrs. Galliani amended her "annuity" agreement with Saturn to reduce her "annuity value" from $2,592,884 to $1,813,784 without any explanation.

**RESPONSE:** Defendant admits that Mrs. Galliani agreed to an amendment of a private

annuity agreement with Saturn One Limited. Defendant denies the allegations contained in paragraph 70 of the complaint to the extent that they do not correctly state the contents of any of the referenced agreements. Except as specifically admitted, defendant denies the allegations contained in paragraph 70 of the complaint.

71.     In 2011, Mr. Galliani terminated his "annuity" agreement under the auspice that the obligated funds had "run out."

**RESPONSE:** Defendant admits entering into a Private Annuity Termination Agreement effective November 1, 2011. Defendant denies the allegations contained in paragraph 71 of the complaint to the extent that they do not correctly state the contents of that agreement. Except as specifically admitted, defendant denies the allegations contained in paragraph 71 of the complaint.

72.     Although Mr. Galliani, Butterfield, and Blenheim took steps to obscure Mr. Galliani's beneficial ownership of the Orange LLC Structure, Butterfield and Blenheim internally referred to Mr. Galliani as the owner of the Orange LLC Structure and its associated accounts.

**RESPONSE:** Defendant denies the allegations contained in paragraph 72 of the complaint.

73.     Communications between Butterfield and Blenheim refer to Mr. Galliani, not Orange LLC, as their client. They also refer to Mr. Galliani as the "settlor, beneficiary, beneficial owner, etc." of Titan.

**RESPONSE:** Defendant denies the allegation that he was "the 'settlor, beneficiary, beneficial owner, etc.' of Titan." Defendant lacks knowledge or information sufficient to form a belief about the truth of the rest of the allegations contained in paragraph 73 of the complaint.

74.     Mr. Galliani was the beneficial owner of the Orange LLC Structure and all its component entities and foreign bank accounts from its inception through at least 2017.

**RESPONSE:** Defendant denies the allegations contained in paragraph 74 of the complaint.

75.     Mr. Galliani is a sophisticated taxpayer. He was educated at a prestigious American university in economics and business. He spent his career working in insurance and dealing with complex financial products.

**RESPONSE:** Defendant admits that he received a bachelor of science degree in business administration from the University of California, Berkeley. Defendant admits that he worked in

insurance. Except as specifically admitted, defendant denies the allegations contained in paragraph 75 of the complaint.

76.     Starting the mid-1990s, Mr. Galliani established a maze of offshore entities to conceal his beneficial ownership of entities and foreign financial accounts holding millions of dollars.

**RESPONSE:** Defendant denies the allegations contained in paragraph 76 of the complaint.

77.     Mr. Galliani established the Janet Trust Structure, the Orange LLC Structure, and had authority over an RBSI account in Guernsey holding $8.7 million in 2000.

**RESPONSE:** Defendant denies the allegations contained in paragraph 77 of the complaint.

78.     Those millions of dollars were transferred to domestic brokerage accounts (at Morgan Stanley) in the United States.

**RESPONSE:** Defendant denies the allegations contained in paragraph 78 of the complaint.

79.     Mr. and Mrs. Galliani disguised their ownership of these domestic brokerage accounts by holding them in the name of multiple foreign nominee entities such as Gresham Nominees (a nominee entity used by Butterfield), Titan, and Saturn, over which Mr. Galliani directed and controlled.

**RESPONSE:** Defendant denies the allegations contained in paragraph 79 of the complaint.

80.     These structures and entities existed to shelter Mr. Galliani's assets from the United States.

**RESPONSE:** Defendant denies the allegations contained in paragraph 80 of the complaint.

81.     In a further effort to conceal his assets, Mr. Galliani instructed Butterfield to avoid sending him banking documents through email.

**RESPONSE:** Defendant denies the allegations contained in paragraph 81 of the complaint.

82.     In September 2016, after the IRS had opened income tax and FBAR examinations against Mr. and Mrs. Galliani, Mr. Galliani closed the two domestic brokerage accounts (at Morgan Stanley) and transferred roughly $9 million from those two accounts into the Titan and Saturn accounts located offshore.

**RESPONSE:** Defendant denies the allegations contained in paragraph 82 of the complaint.

83.     Since the mid-1990s, Karen Stepper, CPA, has prepared Mr. and Mrs. Galliani's

domestic federal income tax returns.

**RESPONSE:** Defendant admits that Ms. Stepper prepared his and Mrs. Galliani's Form 1040, U.S. Individual Income Tax Return, for the tax years 1996 to 2016. Except as specifically admitted, defendant denies the allegations contained in paragraph 83 of the complaint.

84.     Ms. Stepper provided Mr. and Mrs. Galliani with tax organizers and questionnaires each year she prepared their domestic federal income tax returns.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 84 of the complaint.

85.     Mr. Galliani would provide Ms. Stepper with income information which included "annuity" income amounts and computations splitting the "annuity" income into ordinary and capital gain income. Ms. Stepper used the information to complete Mr. and Mrs. Galliani's domestic federal income tax returns.

**RESPONSE:** Defendant admits providing Ms. Stepper with a printout from the software known as NumberCruncher showing the computation of the "Capital Gain Portion" and "Ordinary Income Portion" of annuity payments in compliance with federal law. Defendant believes that Ms. Stepper used this computation in preparing defendant's income tax returns for the tax years 2013 to 2016. Except as specifically admitted, defendant denies the allegations contained in paragraph 85 of the complaint.

86.     Mr. Galliani completed the tax questionnaires.

**RESPONSE:** Defendant lacks knowledge or information about the alleged "tax questionnaires." Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 86 of the complaint.

87.     The tax questionnaires asked, "Do you have an interest in any foreign bank or brokerage account?" For at least tax years 2013, 2014, 2015, and 2016, Mr. Galliani checked the box for "no."

**RESPONSE:** Defendant lacks knowledge or information about the alleged "tax questionnaires." Defendant denies that he had any such interest in a foreign bank or brokerage account. Defendant lacks knowledge or information sufficient to form a belief about the truth of the

18

1    rest of the allegations contained in paragraph 87 of the complaint.

2          88.     For the 2013, 2014, and 2015 tax years, Ms. Stepper sent a letter to Mr. and Mrs.

3    Galliani along with their prepared domestic federal tax returns. The letter advised the following:

> You are required to file Form TDF 90.22-1, Report of Foreign Bank and Financial Accounts by June 30 for any year in which your accounts exceed $10,000 at any time during the year. Furthermore, on Schedule B, if you hold a foreign bank, brokerage, or retirement account, then you must answer the first question affirmatively on Schedule B Question 7a.

**RESPONSE:** Defendant denies that the quotation contained in paragraph 88 of the complaint is complete with respect to Ms. Stepper's letters dated September 26, 2014, and March 14, 2015, addressed to defendant and Mrs. Galliani regarding the tax years 2013 and 2014, respectively. Defendant admits that Ms. Stepper wrote in those letters: "You are required to file Form TDF 90-22.1, Report of Foreign Bank and Financial Accounts by June 30 for any year in which your accounts exceed $10,000 at any time during the year. Furthermore, on Schedule B, if you hold a foreign bank, brokerage, or retirement account, then you must answer the first question affirmatively on Schedule B Question 7a. Since you held an annuity, not a financial account, and since you did not report that account previously, we have answered 'no' this year." Defendant denies that the quotation contained in paragraph 88 of the complaint appears in Ms. Stepper's letter dated August 28, 2016, addressed to defendant and Mrs. Galliani regarding the tax year 2015. Defendant admits that Ms. Stepper wrote in that letter: "You are required to file Form TDF 90-22.1, Report of Foreign Bank and Financial Accounts by June 30 for any year in which your accounts exceed $10,000 at any time during the year (April 15, 2017 deadline for 2016). Furthermore, on Schedule B, if you hold a foreign bank, brokerage; or retirement account, then you must answer the first question affirmatively on Schedule B Question 7a. Since you held an annuity, not a financial account, and since you did not report that account previously, we have answered 'no' again this year." Except as specifically admitted, defendant denies the allegations contained in paragraph 88 of the complaint.

         89.     But on the Schedules B filed with Mr. and Mrs. Galliani's domestic federal income tax returns (Forms 1040) for tax years 2013, 2014, 2015, and 2016, Mr. and Mrs. Galliani checked "no" in response to the question of whether they held an interest in foreign accounts, foreign corporations, or foreign trusts.

1    **RESPONSE:** Defendant denies that he and Mrs. Galliani "checked 'no' in response to the

2    question of whether they held an interest in foreign accounts, foreign corporations, or foreign trusts"

3    on their income tax returns for the tax years 2013, 2014, 2015, and 2016. Defendant admits that

4    Karen Stepper prepared his and Mrs. Galliani's Form 1040, U.S. Individual Income Tax Return, for

5    those tax years. Defendant admits that on those returns the "No" box was checked for the question

6    on line 7a of Schedule B asking at any time during those tax years "did you have a financial interest

7    in or signature authority over a financial account (such as a bank account, securities account, or

8    brokerage account) located in a foreign country?" Defendant admits that on those returns the "No"

9    box was checked for the question on line 8 of Schedule B asking during those tax years "did you

10   receive a distribution from, or were you the grantor of, or transferor to, a foreign trust?" Except as

11   specifically admitted, defendant denies the allegations contained in paragraph 89 of the complaint.

12          90.     For tax years 2013, 2014, 2015, and 2016, Mr. and Mrs. Galliani also did not file any

13   information returns with the IRS showing ownership in a foreign corporation or owning interests in

14   foreign trusts.

15          **RESPONSE:** Defendant denies the allegations contained in paragraph 90 of the complaint to

16   the extent that they omit that defendant filed protective information returns for the tax years 2013,

17   2014, 2015, and 2016.

18          91.     Mr. Galliani did not file FBARs for calendar years 2013, 2014, 2015, and 2016.

19          **RESPONSE:** Defendant denies the allegations contained in paragraph 91 of the complaint to

20   the extent that they omit that defendant submitted FBARs for the tax years 2013, 2014, 2015, and

21   2016 as protective filings.

22          92.     In early 2016, the IRS began an examination of Mr. and Mrs. Galliani's 2000-2016

23   tax returns. The IRS conducted an FBAR examination of the 2013-2016 tax years in conjunction

24   with the income tax examination.

25          **RESPONSE:** Defendant admits that a letter from the IRS dated February 1, 2016, states that

26   the IRS had selected for examination defendant and Mrs. Galliani's Form 1040, U.S. Individual

27   Income Tax Return, for the tax period ending December 31, 2013. Defendant admits that a letter

28   from the IRS dated April 19, 2016, states that the IRS had selected for examination defendant and

Mrs. Galliani's Form 1040, U.S. Individual Income Tax Return, for the tax years 2008, 2009, 2010, 2011, and 2013. Defendant lacks knowledge or information sufficient to form a belief about the truth of the rest of the allegations contained in paragraph 92 of the complaint.

93.     Mr. Galliani was uncooperative during the FBAR examination and ignored the IRS' requests for information.

**RESPONSE:** Defendant denies the allegations contained in paragraph 93 of the complaint.

94.     In response to an Information Document Request, Mr. and Mrs. Galliani signed a statement saying that they had no interest in or signatory authority over any undisclosed foreign accounts. They claimed no foreign business interests other than a partnership holding property in Puerto Rico and claimed to have no interest in any foreign trusts.

**RESPONSE:** Defendant admits answering "No" to a question in Information Document Request Number 2 asking, "Did either of you have signature authority over any additional financial accounts since 2008 to present, either domestic or foreign beyond those accounts indicated to exist by your representative on March 2, 2016?" Defendant admits that in response the request in Information Document Request Number 2 to "[p]lease provide a list of all domestic and foreign business interests either of you held from 2008 through the present Please provide the entity name, location, business conducted, and ownership percentage I shares owned, etc.," defendant listed a 9.25% interest in Hatillo Housing Assoc. Ltd. Partnership in Puerto Rico. Defendant denies the allegations contained in paragraph 94 of the complaint to the extent that they do not correctly state the contents of Information Document Request Number 2 and defendant's responses. Except as specifically admitted, defendant denies the allegations contained in paragraph 94 of the complaint.

95.     In 2018, the revenue agent conducting Mr. and Mrs. Galliani's examination received copies of FinCEN Forms 114 (FBARs) for the 2013, 2014, 2015, and 2016 years from Mr. and Mrs. Galliani's attorney. These forms stated that they were "protective filings" showing that Mr. and Mrs. Galliani held offshore "annuities" with no cash value at Butterfield in the Bahamas. The forms listed Titan and Saturn as the owners of the "annuities." Mr. and Mrs. Galliani did not file these FBARs with the IRS.

**RESPONSE:** Defendant admits that his representative submitted FBARs for the tax years

2013, 2014, 2015, and 2016 as protective filings. Defendant admits that those FBARs stated: "Taxpayer is filing to report insurance annuities which don't have any cash values, as a protective filing." Except as specifically admitted, defendant denies the allegations contained in paragraph 95 of the complaint.

### COUNT ONE: REDUCE WILLFUL FBAR PENALTIES TO JUDGMENT

96.     The United States incorporates by reference the allegations in Paragraphs 1 through 99.

**RESPONSE:** Defendant incorporates by reference his responses to the allegations contained in paragraphs 1 through 95 of the complaint.

97.     During the 2013, 2014, 2015, and 2016 calendar years, Mr. Galliani was a United States person within the meaning of 31 C.F.R. § 1010.350(b).

**RESPONSE:** Defendant admits the allegations contained in paragraph 97 of the complaint.

98.     Mr. Galliani had a financial interest in, or signature or other authority over, within the meaning of 31 C.F.R. § 1010.350(e) or (f), over two Butterfield accounts located in the Bahamas, three RBSI accounts located in Guernsey, and three Investec accounts located in Guernsey ("the Accounts").

**RESPONSE:** Defendant denies the allegations contained in paragraph 98 of the complaint.

99.     The Accounts were bank and/or financial accounts in foreign countries.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 99 of the complaint.

100.     During the 2013, 2014, 2015, and 2016 calendar years, the aggregate balance in the Accounts exceeded $10,000.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 100 of the complaint.

101.     Mr. Galliani did not file FBARs for the 2013, 2014, 2015, or 2016 calendar years to report his financial interest in the Accounts in violation of 31 U.S.C. § 5314 and 31 C.F.R. § 1010.306(c).

**RESPONSE:** Defendant denies the allegations contained in paragraph 101 of the complaint.

1    102.    Mr. Galliani's failure to file FBARs for the 2013, 2014, 2015, or 2016 calendar years

2  was willful within the meaning of 31 U.S.C. § 5321(a)(5).

3    **RESPONSE:** Defendant denies the allegations contained in paragraph 102 of the complaint.

4    103.    On June 8, 2020, a delegate of the Secretary of the Treasury timely assessed FBAR

5  penalties against Mr. Galliani in the total amount of $4,570,750, due to Mr. Galliani's willful failure

6  to file FBARs to disclose his interest in the Accounts (plus two additional accounts) to the IRS for

7  calendar years 2013, 2014, 2015, and 2016. The IRS had proposed a total assessment of $4,587,737

8  but due to an error, the initial assessed amount was $16,987 less for a total of $4,570,750.

9    **RESPONSE:** Defendant denies that he willfully failed to file any FBAR. Defendant lacks

10  knowledge or information sufficient to form a belief about the truth of the rest of the allegations

11  contained in paragraph 103 of the complaint.

12    104.    On November 24, 2020, a delegate of the Secretary of the Treasury timely assessed

13  the additional $16,987 of FBAR penalties against Mr. Galliani that the IRS had previously proposed

14  to assess due to Mr. Galliani's willful failure to file FBARs to disclose the Accounts (plus two

15  additional accounts) to the IRS for calendar years 2013, 2014, 2015, and 2016.

16    **RESPONSE:** Defendant denies that any alleged assessment on November 24, 2020, as

17  referenced in paragraph 104 of the complaint was timely. Defendant denies that he was required to

18  file an FBAR for the calendar years 2013, 2014, 2015, or 2016. Defendant denies that he willfully

19  failed to file any FBAR. Defendant lacks knowledge or information sufficient to form a belief about

20  the truth of the rest of the allegations contained in paragraph 104 of the complaint.

21    105.    A delegate of the Secretary of Treasury sent a notice of the assessments and demand

22  for payment to Mr. Galliani's last known address.

23    **RESPONSE:** Defendant admits that the IRS has demanded payment of a penalty in the

24  amount of $4,587,737.00 that was allegedly assessed on June 8, 2020. Defendant has found no

25  record of a notice and demand for payment of $4,570,750.00. Defendant lacks knowledge or

26  information sufficient to form a belief about the truth of the rest of the allegations contained in

27  paragraph 105 of the complaint.

28    106.    The United States does not seek a judgment against Mr. Galliani for his failure to

report two financial accounts that the IRS included in its original assessment. The Accounts at issue in this complaint do not include these two additional accounts.

**RESPONSE:** Defendant admits that plaintiff does not seek a judgment against him for any alleged failure to report two Morgan Stanley accounts located in the United States for which the IRS alleged defendant was required to report on a FBAR. Defendant admits that "the Accounts" as that term is defined in paragraph 98 of the complaint do not include those two Morgan Stanley accounts located in the United States. Except as specifically admitted, defendant denies the allegations contained in paragraph 106 of the complaint.

107.   However, because the manner and methodology the IRS employed in calculating the amount of the willful FBAR penalties for calendar years 2013, 2014, 2015, and 2016 against Mr. Galliani included consideration of those two additional financial accounts and the balances contained therein, the United States does not seek a judgment in the amount of the willful FBAR penalties the IRS assessed against Mr. Galliani.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 107 of the complaint.

108.   Instead, the United States alleges that the amount of the willful FBAR penalties Mr. Galliani owes should be recalculated in further proceedings after this Court determines that Mr. Galliani is liable for willful FBAR penalties for the calendar years 2013, 2014, 2015, and 2016.

**RESPONSE:** Defendant admits that plaintiff is making the allegation contained in paragraph 108 of the complaint and admits the IRS's calculations are incorrect. Defendant lacks knowledge or information sufficient to form a belief about the truth of the rest of the allegations contained in paragraph 108 of the complaint.

109.   The United States is entitled to judgment against Mr. Galliani finding that he is liable for willful FBAR penalties for his failure to report the Accounts on FBARs for calendar years 2013, 2014, 2015, and 2016, and in an amount that will be determined after further proceedings. That amount shall include pre-judgment and post-judgment statutory accruals as provided by 26 U.S.C. § 3717(a) and § 3717(e), from the date of the judgment until paid in full.

**RESPONSE:** Defendant denies the allegations contained in paragraph 109 of the complaint.

Defendant states affirmative defenses as follows:

## FIRST AFFIRATIVE DEFENSE

The amount of any judgment should be reduced by all payments by defendant, including the payment of $12,928.90 collected by plaintiff on or about March 25, 2022.

## SECOND AFFIRATIVE DEFENSE

Plaintiff is barred by the statute of limitations from collecting any penalty allegedly assessed after the 6-year period provided in 31 U.S.C § 5321(b)(1). In particular, plaintiff is barred from collecting any penalty assessed on November 24, 2020, for the alleged failure to file an FBAR for the year 2013. Plaintiff is further barred by the 2-year statute of limitations provided in 31 U.S.C. § 5321(b)(2)(A) from collecting any penalty assessed before June 8, 2020.

## THIRD AFFIRATIVE DEFENSE

The IRS acted arbitrarily and capriciously in concluding that defendant was required to file FBARs and that any such alleged failure to file an FBAR was willful. In addition, defendant relied on the advice of his CPA, Karen Stepper, that he was not required to file an FBAR. The IRS's findings and conclusions were an abuse of discretion, not in accordance with law, and in violation of the Administrative Procedure Act. The IRS's action, findings, and conclusions should thus be set aside under 5 U.S.C. § 706(2)(B).

## FOURTH AFFIRATIVE DEFENSE

The penalties determined by the IRS as applied to defendant would constitute excessive fines in violation of the Eighth Amendment of the Constitution.

WHEREFORE, defendant asks that the Court enter judgment in favor of defendant and award any other relief that the Court deems just and proper.

Dated: July 6, 2022                    Baker Botts L.L.P.


By: */s/ Jon D. Feldhammer*
    Jon D. Feldhammer
    Benjamin Koodrich

    Attorneys for Defendant
    RAYMOND GALLIANI