UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>RAYMOND A. GALLIANI,<br><br>    Defendant. | Case Nos.  22-cv-03365-JSC (Lead)<br>23-cv-02558-JSC<br><br>**ORDER RE: MOTION TO STAY** |
| UNITED STATES OF AMERICA<br><br>    Plaintiff and Counterdefendant,<br><br>v.<br><br>RAYMOND A. GALLIANI, as personal representative of the ESTATE OF SHARON GALLIANI,<br><br>    Defendant and Counterclaimant. | |

The government filed actions against Raymond Galliani and the Estate of Sharon Galliani—Mr. Galliani's late wife (collectively "Defendant")—alleging they willfully failed to report their interests in foreign accounts (the "FBAR cases"). Later, Defendant filed a petition to the Tax Court, contesting the Internal Revenue Service's notice of deficiency regarding their tax liabilities. Pending before the Court is Defendant's motion to stay the FBAR cases pending resolution of the Tax Court Case. Because Defendant fails to demonstrate hardship or inequity that outweighs the potential harm a stay could cause the government, the Court DENIES Defendant's motion to stay without prejudice.

## BACKGROUND

### I. FBAR CASE

Federal law requires every resident or citizen of the United States who has a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country to report such relationship to the IRS for each year in which such relationship exists. *See* 31 U.S.C § 5314(a); 31 C.F.R. § 1010.350(a). To fulfill this requirement, each such United States resident or citizen must file with the Internal Revenue Service ("IRS") a "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR." *See* 31 C.F.R. § 1010.350.

In 2018, the IRS sent a letter to Mr. Galliani stating it was auditing his FBAR compliance between 2011 and 2016. (Dkt. No. 43-6.)[1] In 2020, the IRS sent a similar letter to Mrs. Galliani, informing her of an audit into her FBAR compliance between 2014 and 2016. (Dkt. No. 43-7.)

On June 8, 2022, the government filed an action against Mr. Galliani for willfully failing to file FBARs for the 2013, 2014, 2015, and 2016 calendar years. (Dkt. No. 1 ¶1.) On May 24, 2023, the government filed a separate FBAR action against Mrs. Galliani's estate[2] for the 2014, 2015, and 2016 calendar years. (23-cv-02558-JSC, Dkt. No. 1 ¶1.) The Court granted the government's motion to consolidate the actions against Mr. Galliani and Mrs. Galliani's estate, (Dkt. No. 32), and Mr. Galliani was appointed as the personal representative of Mrs. Galliani's estate. (Dkt. No. 36.) The government seeks to collect civil penalties for the violations under Title 31 of the United States Code, Section 5321(a)(5)(C). (Dkt. No. 1 ¶11.)

In the complaint, the government alleges Defendant had a "financial interest in, or signatory or other authority over" foreign financial accounts associated with two offshore structures: the Janet Trust and the Orange LLC. (Dkt. No. 1 ¶¶13-74.) The relevant offshore entities holding the accounts are Carbonel, Inc. (100% owned by Janet Trust), and Titan Holdings, Ltd. and Saturn One, Ltd. (100% owned by Orange LLC). (*Id*.) The government further alleges Defendant "willfully" failed to file FBARs for the relevant offshore accounts because they created

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.
[2] Mrs. Galliani died in March 2023. (Dkt. No. 43-1 (Ex. A).)

2

the offshore entities to conceal assets, they had knowledge of the FBAR reporting requirements, and they were not compliant with the subsequent IRS examination. (*Id*. ¶¶75-95.) The FBAR cases are in discovery with a trial date of February 24, 2025. (Dkt. No. 39.)

## II. TAX COURT CASE

In 2016, the IRS sent a letter to Mr. and Mrs. Galliani stating it was opening an audit for their income tax return for the tax year of 2013. (Dkt. No. 43-2.) According to Defendant, the audit was later expanded to include other tax years. (Dkt. No. 42 at 6.)

In September 2023, the IRS sent a notice of deficiency to Defendant, stating they owe additional tax and are subject to civil fraud penalties for the tax years 2000-2003 and 2005-2016. (Dkt. No. 43-1 (Ex. B).) The IRS found Defendant controlled offshore entities under the Janet Trust and Orange LLC structures, which were "sham entities formed solely for the purposes of tax avoidance." (*Id*. at 228.) Defendant's private annuity transactions and Mr. Galliani's service provision arrangements with the offshore entities were deemed as sham transactions. (*Id*.) Accordingly, the IRS concluded any income earned by the offshore entities' accounts was taxable to Defendant, and they owe $5,511,457 in tax and $4,075,739 in penalties. (*Id*. at 36, 228-231.).

In November 2023, Defendant filed a petition to the Tax Court, contesting the IRS's position. (Dkt. No. 43-1.) The Tax Court granted a one-month extension for the IRS's answer to Defendant's petition, extending the deadline to February 7, 2024. (Dkt. No. 43-5.) Defendant claims he intends to resolve the Tax Court case speedily and file a motion to have a trial date scheduled within six months after filing his reply to the IRS's answer. (Dkt. No. 46 at 4.)

## III. PENDING MOTION

Pending before the Court is Defendant's motion to stay the FBAR cases pending resolution of the Tax Court Case.

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In deciding whether to grant a stay, a court may weigh the following: (1) the possible damage which may result from

the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (internal citations and quotation omitted). A district court's decision to grant or deny a *Landis* stay is a matter of discretion. *See Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). "[I]f there is even a fair possibility that the stay. . . will work damage to [someone] else," the burden is on the moving party to "make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

To prevail in the FBAR cases, the government must show: (1) Mr. and Mrs. Galliani are "U.S. Persons," who (2) had an interest in or authority over the subject foreign accounts, which (3) had an aggregate value of $10,000.00 or more, and (4) they willfully failed to file an FBAR Form for the accounts. *See United States v. Hughes*, No. 18-cv-05931-JCS, 2021 WL 4768683 at *12 (N.D. Cal. Oct. 13, 2021) (cleaned up).

Defendant's Tax Court petition attempts to rebut the IRS finding of control over the Janet Trust and the Orange LLC-associated offshore entities to show income earned by those entities' bank accounts should not be taxable.

## DISCUSSION

### A. Defendant Fails to Negate a Fair Possibility of Harm to the Government

The government has demonstrated a stay will be prejudicial because the potentially indefinite delay could thwart its discovery effort and ability to enforce judgment due to the age of Mr. Galliani and some witnesses. (Dkt. No. 45 at 10-13.) Mr. Galliani is 88 years old. (Dkt. No. 49 at 7.) The government describes a laundry list of reasons the Tax Court case may be indefinitely delayed, including a trial date yet to be set and the possibility of appeal to the Ninth Circuit. (*Id*. at 11.) A delay could prevent the government from presenting Mr. Galliani's live testimony at trial. (*Id*. at 13.) Also, if the government prevails, Mr. Galliani's death could cause challenges in judgment collection because Defendant allegedly concealed assets in offshore structures, which will be compounded with further uncertainties arising from Mr. Galliani's estate

4

plan and beneficiaries. (*Id.*) Moreover, this case requires foreign discovery, which is already challenging due to the offshore entities' inherently murky records. (*Id.*) The government points to the recent liquidation of a key offshore entity as an example of time's importance in such foreign discovery. (*Id.*)

Defendant asserts the Tax Court case's timeline is not indefinite because Defendant "is seeking to resolve the Tax Court case as soon as reasonably possible," including obtaining a potential trial date of August 13, 2024, more than six months before this Court's FBAR trial date. (Dkt. No. 46 at 4-5.) Nevertheless, Defendant concedes the Tax Court has not set a trial date. (Dkt. No. 42 at 7.) Defendant further concedes the IRS already obtained a one-month extension for filing an answer to Defendant's petition. (*Id.*) While Defendant insists he will seek to resolve the Tax Court case "as soon as reasonably possible" and will move to set the trial date in August 2024, no trial date has been set or is even about to be set. These circumstances counsel against staying this case.

In *United States v. Clemons*, for example, the defendant in a similar FBAR case moved for a stay pending a Tax Court decision. *See* No. 8:18-cv-258-T-36SPF, 2018 WL 11251686, at *3 (M.D. Fla. Dec. 5, 2018). The court denied the stay and found prejudice to the government because "[it] is not clear when the tax case will be resolved." *Id*. The court denied the stay even though Clemons had filed the Tax Court petition more than one year before the government filed the FBAR case. *Id*. at *2. While in *Clemons* there was a trial date set for the Tax Court case that was continued twice and pending rescheduling, Defendant fails to persuade his tax case will not experience similar procedural delays.

Defendant further argues a delay is not prejudicial because the government has had control and has itself delayed the FBAR cases' filing and discovery. (Dkt. Nos. 42 at 11; 46 at 7.) Defendant alleges any discovery hurdles the government asserts will result from a stay were "intentionally caused by the government itself." (Dkt. No. 46 at 7.) The IRS initiated FBAR compliance audits on Mr. Galliani in 2018 and Mrs. Galliani in 2020, but the government did not file the FBAR cases until two years later, in 2022 and 2023 respectively. (Dkt. No. 42 at 8.) Similarly, the IRS initiated a tax audit in 2016 on Defendant but did not give them the notice of

deficiency—the "ticket" to Tax Court—until 2023.  (*Id*. at 6.)  As to discovery, according to Defendant there has been no complex discovery for the FBAR cases, and the government has not shown any considerable progress with the international discovery.  (Dkt. No. 46 at 6-8.)  The Court is unpersuaded these facts mean a stay is warranted.  First, Defendant does not allege the government gained some advantage from the alleged delays to support his argument the IRS and DOJ orchestrated the timing of the cases "to create exactly the situation Mr. Galliani now finds himself in."  (*Id*. at 8.)   Second, even if the government's alleged intentional tardiness were taken as true, it could only undercut the government's argument about the need for speed; it does not negate the harm to the government's discovery efforts caused by a stay.

Conceding the stay will cause some delays, Defendant cites *Johnson v. Five Points Ctr., LLC* and argues "delay alone does not constitute prejudice."  No. 18-CV-05551-JSC, 2019 WL 3503045, at *1 (N.D. Cal. Aug. 1, 2019).  Defendant overlooks the internal citation in *Johnson*, citing *CMAX, Inc. v. Hall*, where the Ninth Circuit affirmed a stay because mere delay did not constitute "irreparable injury [or] a miscarriage of justice" given discovery proceedings had concluded and there were no foreseeable issues with evidence preservation.  300 F.2d 265, 268-69 (9th Cir. 1962) ("if there is in fact a fair possibility that a stay of the district court proceeding will result in irreparable injury and a miscarriage of justice, petitioner's prospect of showing an abuse of discretion would be considerably increased").  Here, in contrast, discovery is still ongoing, and the government has presented foreseeable issues with evidence gathering due to the advanced age of Mr. Galliani and some witnesses.

Accordingly, Defendant fails to negate a "fair possibility" of harm to the government.

**B. Defendant Fails to Demonstrate a Clear Case of Hardship or Inequity**

When the non-moving party has demonstrated a "fair possibility" of harm, the moving party must "make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.  Defendant fails to demonstrate any hardship or inequity outweighs a stay's prejudice to the government, especially at the discovery stage.

Defendant urges he will suffer hardship and inequity because he will have to (1) litigate the overlapping factual dispute over his alleged unreported income on two fronts with potentially

6

inconsistent results, and (2) proceed with duplicative litigation even though the Tax Court case involves issues that occurred before the alleged FBAR violations.  (Dkt. No. 42 at 11-12.)  Neither factor speaks to how proceeding with discovery in the FBAR cases will cause Defendant hardship or inequity.  And the Court is not persuaded at this point that inconsistent results are a concern.  Finally, Defendant does not explain why a case involving chronologically earlier issues (the Tax Court case) should proceed first given the FBAR cases are farther along with a set trial date, while the Tax Court case was recently initiated.

## CONCLUSION

For the reasons stated above, Defendant has not met his burden in showing his hardship and inequity from being required to go forward outweigh the harm the government could suffer because of the stay.  However, because the analysis may change depending on the Tax Court case's development, the Court DENIES the motion to stay without prejudice.

This Order resolves Dkt. No. 42 of Case No. 22-cv-03365-JSC.

**IT IS SO ORDERED.**

Dated: February 20, 2024

JACQUELINE SCOTT CORLEY
United States District Judge